# United States District Court

FILED
FEB 19 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY KNH DEPUTY

Southern DISTRICT OF California

| In the Matter of the Search of | |
|---|---|
| Priority Mail parcel with Delivery Confirmation of 0306 0320 0002 3897 from Amanda Martinez, 1668 Park Drive, San Diego, CA 92116 to John Martinez, 103 Brooks Boulevard, No. 6, Fort Valley, GA 31030. | **APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**<br>CASE NUMBER: |

I, Kim A. Kelly being duly sworn depose and say:

I am a(n) U. S. Postal Inspector and have reason to believe
Official Title

in the Southern District of California

there is now concealed property, namely (describe the person or property) Priority Mail parcel with Delivery Confirmation of 0306 0320 0002 3897. This parcel is from Amanda Martinez, 1668 Park Drive, San Diego, CA 92116 to John Martinez, 103 Brooks Boulevard, No. 6, Fort Valley, GA 31030.

ntrolled substances, materials, and documents reflecting the distribution of controlled stances through the United States Mail, including money paid for controlled substances, violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and contraband

in violation of Title 21 United States Code, Section(s) 841(a)(1), 843(b) and 846.
The facts to support the issuance of a Search Warrant are as follows:
See attached.

Continued on the attached sheet and made a part hereof. X Yes ___No

[signature]
Signature of Affiant

Sworn to before me, and subscribed in my presence

FEB 15 2008 at San Diego, CA
Date City and State

ANTHONY J. BATTAGLIA
U.S. Magistrate Judge
Name and Title of Judicial Officer

[signature]
Signature of Judicial Officer

AFFIDAVIT FOR SEARCH WARRANT

I, Kim Kelly, being duly sworn hereby depose and state:

1. I am a United States Postal Inspector currently assigned to the San Diego Field Office of the Postal Inspection Service and my duties include investigating crimes against the U.S. Postal Service and the use of the mail including violations of the Drug Abuse Prevention and Control Act.

2. This affidavit is submitted in support of an application for a search warrant for Priority Mail parcel with Delivery Confirmation of 0306 0320 0002 3897. This parcel is from Amanda Martinez, 1668 Park Drive, San Diego, CA 92116 to John Martinez, 103 Brooks Boulevard, No. 6, Fort Valley, GA 31030.

3. I have been a federal agent for 17 years and employed as a Postal Inspector (PI) since July 2007. From Sep 87-93, while employed with the Naval Criminal Investigative Service, I was assigned to investigate narcotics violations.

4. In July 2007, I received specialized training from the U.S. Postal Inspection Service in the following two areas; Investigations involving the use of the U.S. Mails to transport controlled substances and proceeds from the sale of controlled substances; and investigations involving the use of Postal Money Orders and other negotiable instruments to launder the proceeds of controlled substances transactions.

5. Based upon my overall experience, specialized training and discussions with other Postal Inspectors and narcotics agents, I know the following in summary:

   a. Individuals who regularly handle controlled substances can leave the scent of controlled substances on the currency and other items they handle. Proceeds from these sales are

often stored in close proximity to the controlled substances, thereby transferring the odor of the controlled substance to the monies and packaging materials. Narcotic canines are trained to alert on the scents of controlled substances. My experience has shown that occasionally a canine will not immediately alert to the presence of contraband or controlled substance. This may occur for a variety of reasons including the packaging and additional efforts by the sender to mask the scent of a controlled substance. Often the masking agent's scent weakens over time. As a result, a canine may not initially alert to a package they may alert to after a reasonable passage of time.

b. The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substance through these companies.

c. Ongoing investigations have disclosed that Express (overnight) and Priority (two day) parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

d. I know that Southern California is a source region for controlled substances being mailed throughout the United States. The proceeds from these narcotic transactions are then transported via the U.S. Mails and other communication facilities back to Southern California, the source of the controlled substances.

e. Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically Express Mail or Priority Mail, for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

1. Items sent via Express Mail or Priority Mail are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.

2. Express Mail is usually requested to be delivered by the next day's mail.

3. Priority Mail is usually requested to be delivered within two days of mailing.

4. Dispatch times for Express Mail are specific and are controllable by the mailer/shipper.

5. Any delay to the mail is an indication to the mailer the mail items have been possibly compromised by law enforcement agencies to obtain a search warrant.

6. While it is not always the case that a delay of Express Mail or Priority Mail is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of Express Mail or Priority Mail by United States Postal Service.

7. Express Mail and Priority Mail may weigh up to 70 pounds and is desired for large volume shipments.

f. Businesses are more likely to use Express Mail and Priority Mail than First-class Mail in the course of normal business and will often use an Express Mail Corporate Account Number for the billing of the mailed articles.

g. Criminals who are involved in trafficking of controlled substances and drug proceeds will often receive multiple Express Mail articles within a short time period of each other.

h. Criminals who are involved in trafficking of controlled substances and drug proceeds will often use multiple Post Office Boxes, Commercial Receiving Agencies, addresses in foreign countries, and legitimate names and addresses of persons other than their own, or occupants at the residence, in order to receive controlled substances and/or proceeds/monetary instruments at their residence under names and residences other than their own to avoid suspicion and in an effort to conceal their true identities and place of residence.

i. I also know that drug orders containing currency, checks or money orders sometimes do not contain the presence of controlled substances because persons involved in shipping often utilize packing methods and sanitation procedures to conceal the odor or controlled substances.

j. I also know from talking to U.S. Postal Service Supervisors and employees responsible for handling the mail that Express Mail is insured for up to $100 in case of loss or damage. Insurance for Priority Mail may be purchased at an additional fee. Customers are discouraged from sending U.S. currency via the U.S. Mails and are encouraged to purchase negotiable instruments as a means to send currency by the U.S. Postal Service.

6. The information in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

7. On February 14, 2008, during routine interdiction activities at the Midway Processing and Distribution Facility (P&DF) in San Diego, California, I became aware of a suspicious Priority Mail parcel. This parcel was retrieved for further investigation and is the subject of this affidavit.

8. I became suspicious of this Priority Mail parcel for the following reasons: the label was handwritten as opposed to typewritten; and database checks determined the sender's address was not valid.

9. On February 14, 2008, Postal Inspector Kelly Cain met with office Kai Morris, Harbor Police Department, and his trained narcotic detection canine, Luke. Morris and Luke conducted an

exterior inspection of the subject parcels. When Luke examined the parcels described above, Officer Morris advised that Luke did alert to the presence of the odor of controlled substances in both parcels. Luke's qualifications are contained in Attachment (A).

10. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe controlled substances, notes and/or currency from the illegal sale and mailing of controlled substances is being concealed in the subject parcels as described above and seek the issuance of a search warrant directing the search of the article as described above and the seizure of the article, any controlled substances, currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

Kim Kelly
Postal Inspector

Sworn to before me, and subscribed in my presence, on February 15, 2008.

HONORABLE ANTHONY J. BATTAGLIA
U.S. Magistrate Judge

**ATTACHMENT A**
**For**
**Officer K. Morris and K-9 Luke**

Officer Morris is currently a narcotic detection canine handler for the San Diego Harbor Police Department (SDHPD) assigned to the Patrol Division. Morris has been a Police Officer for over 5 years and has worked as a narcotic detection canine handler since December 2005.

Officer Morris has participated in over 80 arrests of persons for violations of controlled substance laws. Morris has in excess of 50 hours of formal training and experience in controlled substances investigations, particularly involving marijuana, methamphetamine, heroin, and cocaine, including the 24 hour California Narcotic Officer's Association Drug Abuse Recognition course. Morris is a member of the California Narcotic Officers Association, and the California Narcotic Canine Association. Morris is familiar with the manner in which said substances are packaged, marketed and consumed. Officer Morris has received formal training and field experience in the identification of controlled substances, particularly those mentioned above.

In November 2005, Officer Morris was assigned to handle K9 "Luke" for the purpose of narcotic detection. Officer Morris and "Luke" attended a 240-hour course of training at Adlerhorst International Kennels in the detection of marijuana, cocaine, heroin and methamphetamine. On December 23, 2005, after a 240-hour training course in the detection of marijuana, heroin, methamphetamine and cocaine, Adlerhorst Certifying Official Steve Sanders certified "Luke" as 100% proficient. On December 1st 2006, California Narcotic Canine Association (CNCA) certifying official Steve Sloan certified "Luke" as 100% proficent.

"Luke's" alert consists of physical and mental reactions, which include a heightened emotional state, and coming to a complete "sit" when his physical position allows. "Luke" has completed over _325_ hours of training. Subsequent to his first certification, "Luke" has alerted over _140_ times.

Officer Morris and "Luke" have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Because of the absorption of the odor, and the narcotics detection dog's inherently keen sense of smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled substance, and ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been the experience of Officer Morris that a properly trained narcotic detection canine will not alert to all currency.

It has been Officer Morris's experience that the training of the canine regarding "proofing" of non-narcotic odors is the most relevant factor regarding alerts on currency. Proofing is a method used in training to ensure the canine alerts only to the odors for which it is trained to alert to. The canine must be "proofed" from numerous odors including currency on a regular basis to maintain consistency. Proofing items have included food, plastic bags and wrap, tape, circulated US Currency, non-circulated US Currency, and other items. "Average contamination" of currency is reported to occur through normal handling. "Luke" has shown during training that he does not alert on circulated currency with "average contamination."

###